BILLY CLIFTON WADE v. CAROLYN DODSON WADE

No. 8415DC52

(Filed 5 February 1985)

1. Appeal and Error § 16— failure to provide security for cost of appeal—motion to dismiss—no jurisdiction of trial court

Motions to dismiss an appeal for failure of an appellant to provide appropriate security for cost on appeal must be directed to the appellate court where the appeal is docketed; therefore, the trial court in this action was without jurisdiction to enter an order dismissing the appeal for plaintiff's failure to post an undertaking on appeal or a cash bond.

2. Divorce and Alimony § 30— equitable distribution of marital property—marital property not sufficiently identified

The trial court's order of equitable distribution of marital property must be vacated where the court did not identify with sufficient detail the property which it determined was marital property; moreover, the court's ruling that plaintiff's misconduct made a detailed listing of the marital property difficult and that plaintiff bore responsibility for the lack of specificity in the judgment did not excuse the court from identifying the property with sufficient detail to enable an appellate court to review the decision and test the correctness of the judgment.

3. Divorce and Alimony § 30— equitable distribution of marital property—use of fair market value error

In determining the equitable distribution of marital property, the trial court erred in using the fair market value rather than the net value of the property.

4. Divorce and Alimony § 30— misconduct during litigation—consideration by court in determining distribution of property improper

In making its determination as to the equitable distribution of marital property, the court must consider the factors listed in G.S. 5-20(c), and the court may not punish a party by considering his misconduct during litigation as a factor under G.S. 50-20(c)(12).

5. Divorce and Alimony § 30— increase in value of separate property—only passive appreciation considered in distribution

The provision of G.S. 50-20(b)(2) that the "increase in value of separate property . . . shall be considered separate property" refers only to passive appreciation of separate property, such as that due to inflation, and not to active appreciation resulting from the contributions, monetary or otherwise, by one or both of the spouses.

6. Divorce and Alimony § 30— real estate as separate property—house as marital property—method of distribution

Where plaintiff acquired real property before the parties' marriage, and they built a house thereon during the marriage with defendant making

Wade v. Wade

substantial contributions toward its construction, the property originally held by plaintiff should be considered separate in character and the house constructed during marriage should be considered marital in character. To the extent that it was marital in character, the property should be equitably divided between the parties along with other marital property, and if it was necessary in order to achieve an equitable distribution of the marital property that the court award that part of the asset which was separate in character to defendant, then the court had it within its power in equity to do so to the extent necessary so long as plaintiff was reimbursed or given credit for the value of his separate property contribution.

**7. Divorce and Alimony § 30— separate property—transmutation through commingling—theory rejected**

The theory of transmutation through commingling, which is that affirmative acts of augmenting separate property by commingling it with marital resources are viewed as indicative of an intent to transmute, or transform, the separate property to marital property, is specifically rejected by the Court of Appeals, since nothing in G.S. 50-20 supports its adoption or indicates a legislative preference for the classification of property as marital, but the statute instead indicates an intent that separate property brought into the marriage or acquired by a spouse during the marriage be returned to that spouse, if possible, upon dissolution of the marriage.

**8. Divorce and Alimony § 30— equitable distribution of marital property—award of costs improper**

In making a determination as to equitable distribution of marital property, the trial court erred in awarding defendant $625 reimbursement for appraisal fees as costs, since the award was for appraisal costs of witnesses voluntarily selected by defendant, and the court did not have the authority pursuant to G.S. 6-1 to make such an award.

**9. Divorce and Alimony § 30— distribution of marital property—consideration of marital misconduct or fault improper**

A proceeding for the equitable distribution of marital property should be confined to the issues of the make-up and value of the marital estate and the respective needs of the parties for marital property, and marital misconduct or fault should not be a factor in determining distribution of marital property.

**10. Divorce and Alimony § 30— marital property hidden from spouse—appraisals based on photographs—evidence admissible**

In a proceeding for the equitable distribution of marital property where the evidence tended to show that plaintiff possessed many vehicles and pieces of heavy machinery during the marriage but he refused to allow defendant to examine them for valuation purposes, the trial court did not err in allowing defendant's witness, who was qualified as an expert in the appraisal of heavy equipment and personal property, to examine photographs of plaintiff's property which defendant had obtained and to give an appraisal, based on his identification of the photographed equipment and upon his experience and expertise in appraising or selling similar equipment.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 21 September 1983 in ALAMANCE County District Court. Heard in the Court of Appeals 18 October 1984.

This is an equitable distribution action. Plaintiff Billy Wade filed for divorce based on one year's separation in 1982. Defendant Carolyn Wade answered, asking that the divorce be granted and that the court order an equitable distribution of the marital property. Plaintiff had evicted defendant from the family home in 1981 after eight years of marriage, and he thereafter exercised physical control over virtually all the marital property. Judgment of absolute divorce was entered in November 1982. The equitable distribution issues were deferred for hearing.

Following discovery and hearing, the trial court entered a judgment of equitable distribution on 21 September 1983. Plaintiff gave notice of appeal, and the trial court set an appeal bond of $250. Upon motion by defendant, the trial court dismissed the appeal for plaintiff's failure to post an undertaking on appeal or a cash bond. Plaintiff gave notice of appeal from that order, posted bond as ordered by the court, and timely filed his record on appeal with this court.

*Vernon, Vernon, Wooten, Brown, Andrews, Garrett and Sandifer, by Wiley P. Wooten and T. Randall Sandifer, for plaintiff.*

*Hemric, Hemric & Elder, P.A., by H. Clay Hemric, Jr. and Nancy G. Hemric, for defendant.*

WELLS, Judge.

[1]  Plaintiff first contends the trial court erred in dismissing his appeal. We agree. Under the provisions of Rule 6 of the Rules of Appellate Procedure, motions to dismiss an appeal for failure of an appellant to provide appropriate security for cost on appeal must be directed to the appellate court where the appeal is docketed. The trial court was without jurisdiction to enter its order of dismissal; therefore, that order is vacated. The appeal from the judgment of 21 September 1983 is properly before this court.

We turn now to the merits of the appeal. In its judgment of equitable distribution, the trial court found that plaintiff had in

his possession marital property with a value in excess of $200,000 including the parties' house and the land under and surrounding the house, "rural land with a value of not less than $10,000, and substantial amounts of personal property including numerous trucks, numerous bulldozers, earth movers, tractors, boats, cars, motorcycles, vans, and large sums of money." The court found that defendant had in her possession a 1977 automobile with a value of $4,000 which was marital property, and that defendant was entitled as a matter of law to an equitable distribution of the marital property. The court also made numerous findings regarding plaintiff's failure to comply with discovery orders, his falsification of documents, and his untruthful testimony. The court concluded from the latter findings that plaintiff's actions constituted fault and that it was within the court's authority to consider such fault in determining an equitable distribution of the marital property.

The court awarded defendant the 1977 automobile, the house and the land underlying it, and awarded the remaining marital property to plaintiff. The approximate total value of the property awarded defendant was $76,400. Since the land on which the house was built was titled solely in plaintiff's name, the court ordered plaintiff to deed to defendant the house and all of the land underlying or contiguous to the house, excluding that part of the land on which plaintiff's business was built, but not to exceed three acres. The court further ordered that plaintiff, in lieu of deeding such property to defendant, could elect to pay defendant the sum of $80,000 in cash or certified funds.

Plaintiff argues the judgment of equitable distribution must be vacated because (1) it is not supported by the evidence and (2) the court did not have authority to order the transfer of his land which he claims was his separate property. Of the five assignments of error upon which these arguments are predicated, however, none address any specific finding of fact and none mention any lack of authority regarding the transfer of separate property. It is fundamental that appellate review depends on specific exceptions and proper assignments of error presented in the record on appeal. Rule 10 of the Rules of Appellate Procedure; *Glace v. Throwing Co.*, 239 N.C. 668, 80 S.E. 2d 759 (1954). The assignment of error must clearly disclose the question presented. *Lewis v. Parker*, 268 N.C. 436, 150 S.E. 2d 729 (1966). A single assignment

generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective. *Lancaster v. Smith*, 13 N.C. App. 129, 185 S.E. 2d 319 (1971). The sufficiency of the evidence is accordingly not before us. Moreover, plaintiff's assignments do not clearly present the question of the authority of the court to award separate property. However, the appeal itself constitutes an exception to the judgment and brings forward any error of law apparent on its face.

[2]   After carefully examining the judgment, we conclude that it does not comply with the standards for orders of equitable distribution we established in *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984); therefore, it must be vacated and the cause remanded for entry of a proper judgment. The court did not identify with sufficient detail the property which it determined was marital property. The court specifically identified the 1977 automobile and the house as marital property, however, the remaining marital property was referred to in very general terms. The court ruled that plaintiff's misconduct made a detailed listing of the marital property difficult and that plaintiff bore responsibility for the lack of specificity in the judgment. Despite the difficulty of the task, the court was required to identify the marital property with sufficient detail to enable an appellate court to review the decision and test the correctness of the judgment. *See Quick v. Quick*, 305 N.C. 446, 290 S.E. 2d 653 (1982). The fact that there is evidence in the record from which sufficient findings *could* be made does not excuse the error. *Id.*

[3]   In determining what distribution of the property is equitable, the court must use the *net* value of the property rather than its fair market value as used by the court here. *See* N.C. Gen. Stat. § 50-20(c) (Cum. Supp. 1983); *Alexander v. Alexander, supra.* G.S. § 50-20(c) sets forth a presumption of equal division which requires that the marital property be equally divided between the parties in the absence of some reason(s) compelling a contrary result. *Id.* In the present case, the trial court distributed the property unequally giving defendant less than an equal share but failed to state in the judgment the reasons justifying the unequal division. Furthermore, based on the record before us, it is not clear that an unequal division in favor of plaintiff was warranted. On remand, if the court concludes that an equal division is not

equitable, it must clearly set forth findings of fact based on the evidence which support its conclusion. *Id.*

[4]   In making its determination, the court must consider the factors listed in G.S. § 50-20(c) and set forth findings of fact in its judgment reflecting its consideration of the relevant factors. The court may not, as it attempted to, punish plaintiff by considering his misconduct during litigation as a factor under G.S. § 50-20 (c)(12). *See Hinton v. Hinton,* 70 N.C. App. 665, 321 S.E. 2d 161 (1984).[1]

We next address whether the court's award of the house and subjacent land to defendant constitutes error of law. The court determined that the house was marital property and was a separate asset from the realty on which it was built and not just an improvement to realty. The evidence clearly shows that plaintiff owned the underlying land prior to the marriage and that it is titled solely in his name. Nevertheless, the court found that plaintiff had in his possession as marital property, subject to equitable distribution, the house and the land under and surrounding the house.

We first consider whether the court was correct in finding that the house was a separate asset from the land on which it was built. Property law generally recognizes two classes of property, real and personal property. *See* N.C. Gen. Stat. § 12-3 (1976); Black's Law Dictionary 1095 (5th ed. 1979). A house, once affixed to the land underneath it, typically becomes part of the realty to which it is affixed. *Ingold v. Assurance Co.,* 230 N.C. 142, 52 S.E. 2d 366 (1949). Though this rule is subject to the exception that the parties may provide to the contrary by contract, express or implied, the burden of proof is on the party claiming the house is personal property to show that it retained that character. *Id.* There is no evidence of any such agreement in this case. Therefore, we must view the house and the land as one asset, that asset being real property.

Next we must determine whether this asset is marital or separate property as defined in G.S. § 50-20(b). That statute defines marital and separate property as follows, in relevant part:

---

1. There are adequate statutory provisions for punishing such misconduct. N.C. Gen. Stat. § 1A-1, Rule 37(b) of the Rules of Civil Procedure (1983) (discovery sanctions); N.C. Gen. Stat. § 5A-11 *et seq.* (1981) (contempt).

(1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section . . .

(2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property . . .

Under the statute, only that property which is marital in character is subject to distribution. *See* G.S. § 50-20(c).

Plaintiff attempted to show at trial that the house and land were his separate property because he acquired the unimproved land prior to the marriage and he contributed some $40,000 of his separate property to the cost of the house whereas defendant contributed only about $5,000. Though it is clear plaintiff acquired the unimproved land prior to the marriage, the trial court found plaintiff's testimony regarding his contributions to the cost of the house untruthful and tainted by forgery. The court found that defendant contributed substantial amounts of money to the construction and maintenance of the house, and indicated that the only credible evidence showed that construction on the house began after the parties were married. Therefore, it appears from the court's findings that the credible evidence showed that the house was constructed during the marriage with marital funds.

[5]  Since the unimproved real property was acquired by plaintiff prior to the marriage, it would ordinarily be considered separate in character. Assuming that it is separate in character, it could

then be argued that the improvements to the real property, *i.e.*, the house, merely constitute an increase in the value of the property, and as such, must also be considered separate in character as mandated by that part of G.S. § 50-20(b)(2) which provides "[t]he increase in value of separate property . . . shall be considered separate property." We find that argument unpersuasive.

G.S. § 50-20 is a remedial statute enacted to ensure a fairer distribution of marital assets than under common law rules. The type of unfair results possible under those older rules is well demonstrated by *Leatherman v. Leatherman*, 297 N.C. 618, 256 S.E. 2d 793 (1979) (even assuming husband unjustly enriched by wife's efforts over several decades on behalf of his corporation, wife had no right to share in corporate assets). A remedial statute must be construed broadly, in light of the evils sought to be remedied and the objectives to be attained. *Puckett v. Sellars*, 235 N.C. 264, 69 S.E. 2d 497 (1952). In light of the remedial nature of the statute and the policies on which it is based, we interpret its provision concerning the classification of the increase in value of separate property as referring only to passive appreciation of separate property, such as that due to inflation, and not to active appreciation resulting from the contributions, monetary or otherwise, by one or both of the spouses. This interpretation of the statute is consistent with the approach taken by the overwhelming majority of jurisdictions considering the issue. *See* 1 Valuation and Distribution of Marital Property § 18.06 (J. McCahey ed. 1984); S. Sharp, Equitable Distribution of Property of North Carolina: A Preliminary Analysis, 61 N.C. L. Rev. 247, 260-261 (1983). The appreciation of the real property in the present case was clearly the active type as it resulted from the parties' contributions during the marriage. Therefore this provision in G.S. § 50-20(b) does not apply and we are not required to classify the improved real property as entirely separate in character.

Moreover, given the court's findings, we believe it would be totally inequitable and inconsistent with the policy and purpose of the statute to classify the improved real property as entirely separate property belonging to plaintiff. As this court has previously recognized, G.S. § 50-20 was enacted in recognition of marriage as a partnership and is based at least in part on a policy of repayment of contribution. *Hinton v. Hinton, supra; see also White v. White*, 64 N.C. App. 432, 308 S.E. 2d 68 (1983), *disc. rev.*

*allowed,* 311 N.C. 309, 317 S.E. 2d 908 (1984). Courts in other states have recognized that the theory of marriage as a partnership

> [R]equires that the marital estate be entitled to a proportionate share in the value of property where its equity interest was partially acquired by marital funds. Where the marital estate chooses to invest its funds in certain property together with non-marital funds, the marital estate is entitled to a proportionate return on its investment. . . . The marital and non-marital estates have each made investments from which they are entitled to the full benefit and return.

*Tibbetts v. Tibbetts,* 406 A. 2d 70 (Maine 1979) (citations omitted); *see also Harper v. Harper,* 294 Md. 54, 448 A. 2d 916 (1982). To hold otherwise would create incentive for a sophisticated spouse to divert marital funds into improving his or her separate property thereby depriving the other spouse of any possible return of the marital investment upon the dissolution of the marriage. *See Hall v. Hall,* 462 A. 2d 1179 (Maine 1983).

[6]   In this case it is clear the marital estate invested substantial sums in improving the real property by constructing a house on it; therefore, the marital estate is entitled to a proportionate return of its investment. *Accord, Turner v. Turner,* 64 N.C. App. 342, 307 S.E. 2d 407 (1983) (where an equity developed in a house purchased by the husband before marriage because of improvements or payments contributed to by the wife during the marriage, that equity could be marital property). Defendant contributed substantially towards construction of the house and it would be contrary to the intent of the statute to deprive her of any possible return of her contributions to the marital estate.

In so concluding, we recognize that a dynamic rather than static interpretation of the term "acquired" as used in G.S. § 50-20(b)(1) will best serve to prevent inequity. *See* Sharp, *supra;* Equitable Distribution of Property § 5.07 (L. Golden, ed. 1983); *Tibbetts v. Tibbetts, supra; Harper v. Harper, supra.* We agree that acquisition must be recognized as the ongoing process of making payment for property or contributing to the marital estate rather than being fixed on the date that legal title to property is obtained. *Tibbetts v. Tibbetts, supra.*

[7]   Defendant suggests that we adopt the theory of "transmutation through commingling" and find that the improved real property is entirely marital property. Under that theory, affirmative acts of augmenting separate property by commingling it with marital resources is viewed as indicative of an intent to transmute, or transform, the separate property to marital property. *In re Marriage of Smith*, 86 Ill. 2d 518, 427 N.E. 2d 1239 (1981); *In re Marriage of Lee*, 88 Ill. App. 3d 1044, 410 N.E. 2d 1183 (1980), *aff'd*, 87 Ill. 2d 64, 430 N.E. 2d 1030 (1981). This theory is particularly well developed in Illinois where it was first adopted by judicial decision and later by legislative amendment. *See In re Marriage of Smith*, *supra*, and Ill. Stat. Ann. Ch. 40, § 503 (Supp. 1984). It has been accepted, however, in other jurisdictions as well. *See, e.g., Darling v. Darling*, 444 A. 2d 20 (D.C. 1982). Adoption of the theory of transmutation has been based on the preconceived legislative preference for the classification of property as marital. *See In re Marriage of Smith*, *supra*.

We refuse to adopt the theory of transmutation because we find nothing in G.S. § 50-20 which supports its adoption or which indicates a legislative preference for the classification of property as marital. North Carolina has not legislatively adopted a presumption that property acquired during the marriage is marital, as has Illinois, and in fact has adopted a more expansive definition of separate property than most states. *See* Sharp, *supra*. To the contrary, we discern from the statute a clear legislative intent that separate property brought into the marriage or acquired by a spouse during the marriage be returned to that spouse, if possible, upon dissolution of the marriage. This is particularly well demonstrated by that part of G.S. § 50-20(b)(2) which states: "Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance."

We conclude that in order to be consistent with the language and purpose of G.S. § 50-20 the real property concerned herein must be characterized as part separate and part marital. Other states have recognized the dual nature of property that has been acquired with both marital and separate assets. *Frank G.W. v. Carol M.W.*, 457 A. 2d 715 (Del. 1983); *Tibbetts v. Tibbetts*, *supra;*

*Harper v. Harper, supra; Sementilli v. Sementilli,* 102 A.D. 2d 78, 477 N.Y.S. 2d 626 (1984). This approach has generally been referred to as the source of funds theory. *See, e.g., Harper v. Harper, supra.* Under this theory, when both the marital and separate estates contribute assets towards the acquisition of property, each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property. *Id.* Thus, both the separate and marital estates receive a proportionate and fair return on its investment.

[6]   When this theory is applied in the present case, the result is not very different from the result reached by the trial court viewing the land and house as two separate assets. That part of the real property consisting of the unimproved land owned by plaintiff prior to the marriage should be considered separate in character and that part of the property consisting of the house which was constructed during the marriage with marital funds should be considered marital in character. Because of his contribution of separate property, plaintiff is entitled to a return of, or reimbursement or credit for, that contribution.

To the extent the property is marital in character, it is to be equitably divided between the parties along with the other marital property. Unfortunately, plaintiff had possession of most of the remaining marital property and had either hidden, sold, or otherwise disposed of it, or in some way made it difficult for the court to award it to defendant. The only asset the court could award defendant as her share of the marital property which would be of any significant and practical value to her was the house. In order to award her the house, the court necessarily had to award her part of the land underlying the house. The question we must resolve then is whether the court could award part of the land which was separate in character to defendant. We conclude that it could.

Since the house and the land are one asset, and that asset is at least partially marital in character, the court had it within its authority to include that asset in its distribution. If it is necessary in order to achieve an equitable distribution of the marital property that the court award that part of the asset which is separate in character to defendant, then we believe the court has it within its power in equity to do so to the extent

necessary so long as plaintiff is reimbursed or given credit for the value of his separate property contribution. That part of the asset which is separate in character should be returned in kind to the person contributing it so far as it is practical, but if it is not practical or equitable to do so, then the court must be permitted to take whatever measures are necessary in distributing the property to achieve equity between the parties. *See Tibbetts v. Tibbetts, supra.* It has long been recognized that courts have within their powers in equity the authority to compel one person to convey title to property to another person when justice requires it as is best demonstrated by courts' use of the equitable remedy of constructive trust. *See* 27 Am. Jur. 2d *Equity* § 105 (1966); *Wilson v. Development Co.,* 276 N.C. 198, 171 S.E. 2d 873 (1970). As is indicated by G.S. § 50-20(g), our legislature recognized this power of the courts to order the transfer of real property under appropriate circumstances.

The trial court only awarded so much of the subjacent land to defendant as was reasonably necessary for use and enjoyment of the house, and allowed plaintiff the option of paying defendant a certain sum of money in lieu of deeding her the property. Given that the court allowed plaintiff that option and so limited its award of the land, we conclude that it was not error as a matter of law for the court to award to defendant the house and subjacent land. We note, however, that the court was not sufficiently specific in its identification of the part of the land to be deeded to defendant. It is essential to a transfer of land that the land be described with sufficient definiteness and certainty to be located and distinguished from other land. *Hodges v. Stewart,* 218 N.C. 290, 10 S.E. 2d 723 (1940). On remand, the trial court should by appropriate order, precisely determine that part of the land which is necessary for use and enjoyment of the house to be deeded to defendant in accordance with the court's directions and to determine the value of that land. The trial court should also clearly indicate in its judgment that it has taken into account plaintiff's right to reimbursement or credit for the value of that part of his separate property contribution not returned to him in determining an equitable distribution of the marital property.

We now briefly discuss plaintiff's other assignments of error. Plaintiff assigns error to the denial of his motion to dismiss, made at the close of defendant's evidence. Plaintiff's motion presented

to the trial court, sitting without a jury, the question of whether defendant's evidence would support findings of fact upon which the trial court could properly enter a judgment in defendant's favor. *See Dealers Specialties, Inc. v. Housing Services*, 305 N.C. 633, 291 S.E. 2d 137 (1982); *see also Bryant v. Kelly*, 10 N.C. App. 208, 178 S.E. 2d 113 (1970), *rev'd on other grounds*, 279 N.C. 123, 181 S.E. 2d 438 (1971). Our review of the record indicates that defendant's evidence establishes *prima facie* her entitlement to an equitable distribution of a substantial amount of marital property. Plaintiff's motion was correctly denied and this assignment is overruled.

The trial court allowed defendant to reopen evidence two weeks after the original hearing and denied plaintiff's motion for a continuance. Plaintiff assigns error. Both motions lay within the court's discretion. *Miller v. Greenwood*, 218 N.C. 146, 10 S.E. 2d 708 (1940) (reopen evidence); *Shankle v. Shankle*, 289 N.C. 473, 223 S.E. 2d 380 (1976) (continuance). No abuse appears, particularly in light of the fact that no new substantive evidence came in following reopening.

[8]    Plaintiff assigns error to the trial court's awarding defendant $625 reimbursement for appraisal fees as cost. We agree this was error. Costs are awarded only pursuant to statutory authority. N.C. Gen. Stat. § 6-1 (1981); *City of Charlotte v. McNeely*, 281 N.C. 684, 190 S.E. 2d 179 (1972). While the trial court has broad discretion to allow costs, N.C. Gen. Stat. § 6-20 (1981), it may exercise that discretion only within the bounds of its statutory authority. We are aware that we have approved an award of deposition fees not expressly allowed by statute, following the general definition of "costs" in other jurisdictions. *Dixon, Odom & Co. v. Sledge*, 59 N.C. App. 280, 296 S.E. 2d 512 (1982) (citing 20 Am. Jur. 2d *Costs* § 56 (1965)). Unless an expert witness is subpoenaed, however, the witness' fees are not generally recognized as costs. *State v. Johnson*, 282 N.C. 1, 191 S.E. 2d 641 (1972) (interpreting N.C. Gen. Stat. § 7A-314 (1981)); 20 Am. Jur. 2d *Costs* § 65 (1965). The award in this case was for "appraisal" costs of witnesses voluntarily selected by defendant. The portion of the trial court's order awarding costs was therefore error and must be vacated.

Plaintiff also brings forward several evidentiary questions. The standards of evidence are somewhat relaxed in trials before

the court sitting as finder of fact. 1 H. Brandis, N.C. Evidence § 4a (1982). To obtain reversal, plaintiff must show (1) not only that evidence was improperly admitted but also that the trial court relied on it in making its findings, *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976), or (2) not only that the evidence was improperly excluded but also that a different result would likely have ensued if it had been admitted. *Responsible Citizens v. City of Asheville*, 308 N.C. 255, 302 S.E. 2d 204 (1983). These assignments are overruled.

[9] Plaintiff assigns error to the exclusion of evidence of defendant's marital misconduct prior to the dissolution of the parties' marriage. At trial, plaintiff was not allowed to cross-examine defendant as to defendant's misconduct. We hold that this evidence was properly excluded. In *Hinton v. Hinton, supra*, a divided panel of this court held that marital misconduct, or fault, should not be a factor in determining an equitable distribution of marital property. While we may not agree with or adopt all the reasoning relied on by the majority in *Hinton*, we do agree with the *Hinton* majority that under our overall statutory scheme, an alimony proceeding is the appropriate means for addressing the economic implications of marital misconduct. It is our position that an equitable distribution proceeding should be confined to the issues of the make-up and value of the marital estate and the respective needs of the parties for marital property. This assignment is overruled.

[10] Plaintiff next assigns error to the trial court's allowing opinion testimony as to the value of certain property later found by the court to be marital property. At trial, defendant's evidence showed that during the course of the parties' marriage, plaintiff possessed a number of items of personal property which included cars, trucks, earth moving and hauling equipment, boats, and trailers. Plaintiff kept much of this property secreted and refused to allow defendant to examine it for valuation purposes, but defendant was able to photograph much of this property. Defendant's witness, Kenneth Teague, was qualified as an expert in the appraisal of heavy equipment and personal property. Teague was shown the photographs of the secreted items of property and was then allowed to give an appraisal, based on his identification of the photographed equipment and upon his experience and expertise in appraising or selling similar equipment. Plaintiff contends

this was error, arguing that there was no showing that Teague was familiar enough with the property to put a value on it. We disagree. The probative value of Teague's opinion testimony was thoroughly explored on cross-examination and by questions from the trial judge. We hold that Teague's testimony was competent; its weight was for the trial court to determine. This assignment is overruled.

Plaintiff also assigns error to the refusal of the trial court to allow into evidence certain exhibits offered by plaintiff in corroboration of testimony offered by his witnesses. Plaintiff has not properly identified the testimony involved, nor has he otherwise presented any basis sufficient for this court to address or evaluate this assignment of error. This assignment is therefore overruled.

Plaintiff also assigns error to the trial court's refusal to allow him to testify that defendant had stated during settlement negotiations that she had no interest in the parties' marital home. The relevance of such an ambiguous statement is dubious, particularly since it accurately reflected the state of legal title at the time. It certainly was not judicially binding, and no prejudicial error resulted from its exclusion. This assignment is overruled.

Plaintiff also assigns error to the trial court's allowing plaintiff's son to testify as to the amount of cash the son saw in his father's possession. The son testified that during the parties' marriage he saw large sums of cash in his father's safe, that the safe was at least a foot wide and about two and one-half to three feet tall, that the cash was kept on a shelf inside the safe which was six to eight inches in depth and which extended for the width of the safe, and that the money occupied the entire shelf. He stated that on many occasions his father had taken out stacks of the money and shuffled it through his fingers, and that he only saw hundred dollar bills in the stacks. The son testified that he had an opinion satisfactory to himself as to how much money was in his father's safe based on his personal observation of the money, and that it was his opinion that the money in the safe totaled $40,000 to $50,000. We hold that this evidence was properly admitted and its weight was for the trial court to determine. This assignment is overruled.

Plaintiff also challenges the sufficiency of the evidence generally and attempts to show that the burden of proof was misplaced. Only the one assignment noted previously appears in the record, however, and we have already held it ineffective. These questions are accordingly not before us.

Substantial judicial resources have already been exhausted by this litigation, and a voluminous record free of evidentiary error has been compiled. A new trial would be unnecessarily wasteful. Accordingly, the trial court may rely on the existing record on remand. *Chemical Realty Corp. v. Home Fed'l Savings & Loan,* 65 N.C. App. 242, 310 S.E. 2d 33 (1983), *disc. rev. denied,* 310 N.C. 624, 315 S.E. 2d 689 (1984), *cert. denied,* --- U.S. ---, 105 S.Ct. 128 (1984).

The case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; vacated and remanded in part.

Judges ARNOLD and HILL concur.

Former Judge HILL concurred in this opinion before 31 December 1984.